Howard *v.* Hutchinson.

notice. This is in violation of a familiar principle, that oral testimony shall not be received to explain a record or matter in writing. *Jenner v. Jolliff*, 6 *Johns. R*; 10 *Johns. R.* 248.

If the party rely upon the written return of notice, he must rely upon it altogether — he cannot alter, or add to it, by parol testimony. The return in this case shows a service of notice on the *attorney* merely.

The justices before whom the oath was administered, could not legally proceed to administer it, the return showing merely a service on the attorney. It was not competent for them to receive evidence of the consent of the creditor.

*Sprague*, for the defendants, was stopped by the Court.

---

## HOWARD *vs.* HUTCHINSON.

It is not necessary that, the laying out of a town way, by the Selectmen, under the provisions of *stat.* of 1821, *ch.* 118, *sec.* 9, should be preceded by either a written or verbal request for that purpose.

In the laying out of such road, the Selectmen are bound to give notice to the owner of the land over which they are about to make such location, even though, by a reservation in his title deed, he be not entitled to damages.

The act of locating, should *precede* the issuing a warrant, calling a meeting of the inhabitants to act upon the subject.

Where the proprietors of a township of land, in 1761, in laying it out into lots, caused range-ways of eight rods in width, to be designated on the plan, as " left for roads ;" and afterward, in 1825, the range-ways not having been used for roads, they convey one of them to A. H., reserving a right in the town, to lay out a road over said range-way, without being subject to the payment of damages, it was *held*, that, such original appropriation, and subsequent reservation, conveyed no interest in the soil of said range-way, to the town ; — and that in laying out a road over it, the Selectmen were bound to conform to the statute provisions on the subject.

THIS was an action of trespass *quare clausum fregit*, for cutting down and carrying away trees from the range-way in the rear of front lot, No. 47, in the town of *Sidney*, according to *Winslow's* plan.

The general issue was pleaded and joined. A brief statement was also filed by the defendant, in which he justified as a surveyor of the highways, for the town of *Sidney*, representing the *locus in quo* as a highway, duly laid out as such by the Selectmen, and accepted by the inhabitants of said town, and that said highway was assigned to him.

To prove the laying out of this highway, the defendant produced the records of the town of *Sidney*, — the competency of which for this purpose, was objected to by the counsel for the plaintiff; and this question among others, was reserved by *Weston J.* who tried the cause.

It did not appear that the plaintiff had notice, at and before the laying out and acceptance of the road; and it was insisted by the defendant's counsel, that, in regard to range-ways of this description, and especially considering the terms of the plaintiff's deed, no notice was necessary.

It appeared that the warrant for calling the meeting at which the laying out was accepted, was dated the 27*th* of *February*, while the actual laying out by the Selectmen was not until the 7*th* of *March* following.

The plaintiff derived title from the *Proprietors of the Kennebec Purchase*, through the deed of their agents, *Thomas L. Winthrop, James Bridge* and *Reuel Williams*, dated *Oct.* 26, 1825. It conveyed a part of the range-way in the rear of the first tier of lots, and contained a reservation in favour of the town of *Sidney*, and the county of *Kennebec*, to lay out a road over such range-way, without being subject to the payment of damages to the grantee.

" It appeared that in 1761, the tract of country now comprised within the limits of the town of *Sidney*, and adjoining the *Kennebec* river, was divided into lots by the direction of the *Proprietors of the Kennebec Purchase*, at that time the owners of the whole tract. The division was made, and plan returned by one *Winslow*. The plan represented three ranges

of lots; the first range lying upon the river, and extending back one mile; the second including the second mile from the river, and the third range including the third mile, so that each range was one mile in width. It was understood that there was no actual survey, except on the river, and that all the other lines of the three ranges were laid down without reference to known monuments or actual admeasurement. The plan represented a vacant space of eight rods in width, between each of these ranges, as left for roads; but as there had been no actual examination, or laying out of the roads, the surveyor, in addition to his return, added, that the reservations for roads were to be altered according to the convenience of the settlers."

By conveyances of the Proprietors as early as 1764, they described the front lots as fifty rods on the river, and three hundred and twenty rods in length; — and the lots in the second range, as commencing at a point, one mile *and eight* rods from the river; thus excluding the range-ways.

The road in question, was run out and marked by the Selectmen, in *March*, 1827. The defendant, by direction of the Selectmen, cut down the trees in the road, in *June*, 1829. Afterwards, and some time in the fall of 1829, the Selectmen directed the defendant, as surveyor, to remove the trees, wood and stumps, and for that purpose to make sale of the same. One *Palmer Branch* became the purchaser, agreeing in consideration thereof, to remove the wood and cut down the stumps, so that the road might become passable in the winter. Afterwards said *Branch* offered the bargain to the plaintiff, who declined it. *Branch* then concluded to act under the defendant, and proceeded, with and under him, to remove the wood. The plaintiff afterwards on the same day, sent some men who removed a part of the wood for him; but the principal part of it was removed by the defendant. The plaintiff also, *after* the location, stated that if the road could be permitted to remain till a certain time, he himself would clear it out.

On the whole evidence, the presiding Judge ruled, that the road was not legally laid out, reserving the question for the decision of the whole Court.

The jury returned their verdict for the plaintiff. And it was agreed, that if the opinion of the Court should be that, the road was legally laid out, and the defendant justified in what he did, the verdict was to be set aside and a general verdict entered for the defendant ; otherwise, judgment was to be rendered for the plaintiff upon the verdict returned.

*Sprague*, for the defendant, insisted, 1. that no notice to the plaintiff in the laying out of this road was necessary. The statute requires it only in the laying out of county roads. In *Harlow v. Pike*, 3 *Greenl.* 438, the Court thought it was required by the necessity of the case. The reason assigned was, that, the owner of the land being entitled to damages, on the appropriation of his land to public uses, he ought to have notice, that he may protect his constitutional rights. But this case does not come within the reasoning of that. Every reason for extending the construction of the statute, fails in this case. Here the land had been designated, marked out, appropriated, for public purposes. It had been for a great length of time, well known as a way reserved. Here, too, the owner had actually received pay for his land. Lands adjoining range-ways sell for more, and their real value is enhanced in consequence of such reservations. But further, after the Proprietors had laid out these range-ways, it might be considered as an offer to the town, which the latter might accept at any time. They could not retract it after having sold and bounded lots upon these ways. So that if they had sold this range-way to the plaintiff unconditionally, it could have availed him nothing, the Proprietors not having it in their power to retract their offer. But they did not sell unconditionally — there is a reservation in the deed to him of the right to locate roads over any part of the range-way without the payment of damages. This of itself, operates as a *perpetual notice* to him. He saw by the plan that this land had been set out for public purposes — that the Proprietors had in fact sold it — and he took a deed containing a reservation for a more particular appropriation of it, without creating any claim on his part for damages. There was, therefore, no necessity for a particular notice.

To show that the Proprietors had no right to shut up the

range-ways and retract the offer that they might be considered as having made to the town, and that what they had done operated as covenants that the ways do exist, he cited *Parker v. Smith,* 17 *Mass.* 413; and *Emerson v. Wiley,* 10 *Pick.* 310.

But if notice was necessary, the right to it on the part of the plaintiff was waived. After the location it seems he stated, that if the road could be permitted to remain until a certain time, he himself would clear it. This, it is contended, was clearly a waiver of right to notice.

2. This action is trespass *quare clausum fregit* — the gist is the breaking — if that is justified, all is justified. If in an action for breaking and carrying away, the breaking be justified, but not the carrying away, the action cannot be maintained. *Ropps v. Barker & al.* 4 *Pick.* 239; *Kingsbury v. Pond,* 3 *N. H. Rep.* ; 3 *Stark. Ev.* 1471. Therefore, if the road be located properly, the carrying away of the wood, though wrong, will not enable the plaintiff to prevail in this action.

To show that this was a legal highway, he cited *State v. Kittery,* 5 *Greenl.* 254; *Maine Stat. ch.* 118, *sec.* 9, 13.

It being a highway, *Hutchinson,* as a citizen of the town, had a right to be there, and to cut down and remove obstructions, independently of his official character. As a surveyor, he was not only authorized, but bound to open it. *Wood v. Waterville,* 5 *Mass.* 294.

In the location of county roads, the commissioners may allow time to the owner of the land to take off the wood. This is to be taken into consideration in estimating the damages. But in the case of town ways there is no such provision. If the owner is not entitled to take off the wood, then it is taken by the public, for public purposes, the moment the road is located. When the public take the land, they take it as it is, the wood therefore should be included in the estimate of damages.

But if, by analogy, the Selectmen should be considered as having the right to allow time for the taking off the wood — the same right that the County Commissioners have, then it is contended that the plaintiff had a time allowed him — he agreed to do it, but did not — and has therefore forfeited the wood to the use of the road.

As to the surveyor's authority, he cited further, *Craige v. Mellen*, 6 *Mass.* 16.

*R. Williams*, for the plaintiff, insisted that in this case there was no legal location of a road.

1. There was no application *in writing* to the Selectmen to lay out the road, as there should have been. *Maine Stat. ch.* 118, *sec.* 9, 10, 11.

2. The laying out of the road and a return should have preceded the issuing a warrant to call a meeting of the inhabitants to see if they would accept. *Harlow v. Pike*, 3 *Greenl.* 440; *Kean v. Stetson*, 5 *Pick.* 494.

3. Again, there was *no notice to the plaintiff* of the laying out of the road, at the time, or before it was laid out and accepted. That this is fatal to the proceedings, is decided in *Harlow v. Pike*, before cited.

4. But if the road were legally laid out and established, the defendant would not be justified in taking away the wood as he did. The soil and trees remained the property of the plaintiff, subject only to the right of the public to make the road and pass and repass over it. *Perley v. Chandler*, 6 *Mass.* 454; *Stackpole v. Healy*, 16 *Mass.* 33; *Robbins v. Borman*, 1 *Pick.* 122; *Alden v. Murdock*, 13 *Mass.* 256.

The counsel for the plaintiff also replied at length to the arguments urged on the other side, but the opinion of the Court renders it unnecessary to notice the reply more particularly.

PARRIS J. at the ensuing *June* term in this county, delivered the opinion of the Court.

The defendant justifies as surveyor of highways, contending that the place where the trespass is alleged to have been committed, is a highway, duly laid out as such by the Selectmen of the town of *Sidney*, and adopted by the inhabitants of said town, as required by law; and that whatever he did, was done in the exercise of his lawful authority. The plaintiff contends that the road was not legally laid out, for various reasons. — 1st, Because there was no application in writing to the Selectmen, previous to their proceeding, and that the Selectmen are not authorized to act, except upon written request,

Howard *v.* Hutchinson.

The act directing the method of laying out, and making provision for the repair and amendment of highways, *ch.* 118, *sec.* 9, authorizes and empowers the Selectmen of the several towns to lay out town or private ways for the use of such town only, or one or more individuals thereof, or proprietors therein. But no such town or private way can be established until the same has been reported to the town at some public meeting of the inhabitants, held for that purpose, and by them approved and allowed. We find nothing in the statute requiring any application as the basis of the proceedings of the Selectmen. The authority to them is general to lay out such town ways, as they may deem for the convenience of the town ; and whenever they may judge a town way necessary, we do not perceive any thing to restrain them from proceeding, unsolicited, to adopt the usual measures preparatory to its establishment. If they neglect to do it, the statute has pointed out the mode by which the subject may be brought before the Court of Sessions ; and in such a case, it is necessary that there should have been a written request to the Selectmen, as well as a refusal or unreasonable delay to lay out, to give the Court jurisdiction of the case. It has no power to cause private ways to be laid out, except in cases of refusal by the Selectmen on written request. The 10th section of the statute expressly limits the power to such cases. But there is no such limitation in the 9th section. The authority conferred upon the Selectmen by that section is general, and we do not perceive but they may proceed to lay out a town way upon a verbal request, or without any request, if they deem the convenience of the town requires it. The next objection to the legality of the road is, that the plaintiff was owner in fee of the land over which the road was laid, and that he was not notified of the laying out by the Selectmen. Although the statute does not expressly require that the Selectmen should give notice of the intended location of a town way, to those over whose land they are about to lay it, yet this Court decided in *Harlow v. Pike,* 3 *Greenl.* 438, that it is necessary to the legality of such way, that due notice be previously given by the Selectmen to all persons interested in the location, in the same manner as a committee of the Court of Sessions are bound to

do. But it is answered, in reply to this objection, that the plaintiff had no legal claim to damages, and consequently had no interest to protect; that notice to him would have been an idle ceremony, and not required by the spirit, or falling within the reason of the decision of *Harlow v. Pike.*

From the report of the facts in the case, it does appear, that the plaintiff holds the premises subject to the right of either county or town to lay out a road over the same, without claim for damages. In the deed under which he derives title, that right is expressly reserved. He does not, however, hold under the town, but under the Proprietors of the Kennebec purchase. — The town of *Sidney* never owned the fee, and, as a town, has no greater rights over or upon the land included in the plaintiff's deed, in consequence of the reservation therein contained, than it would have had if no such reservation had been made. The town has the right, by law, through its proper functionaries, to lay out and make roads over any land within its limits; and, notwithstanding this reservation, no easement is acquired by the town or any of its inhabitants over the plaintiff's land, until a road is laid out in pursuance of the provisions of law. Inasmuch as the plaintiff is not entitled to any damages for the easement, whenever the town may choose to enforce its rights, it is contended that he has no such interest as entitles him to notice previous to the laying out. The Court did give as a reason why notice was necessary in *Harlow v. Pike*, that those through whose land a town way is laid, are always more or less affected by such location, because they are entitled to damages occasioned thereby. That, indeed, is one way in which they may be affected, but it may not be the only way, and the Court lay it down as a general principle applicable to all cases, that those who are interested in the location are entitled to notice. — Was not the plaintiff interested in this laying out. We think the facts shew him to have been deeply so. In the first place, the right of way was to be taken and enjoyed without any equivalent to him from the town. It was all important then to him to postpone the laying out, and this he might do by convincing the Selectmen that there was no necessity for opening such a road, that the convenience of the people did not require

it, and that the interest of the town would be injured rather than promoted thereby. 'Moreover, his rights and interest might be seriously affected by the manner of laying out, and the facts shew a forcible illustration of such a case. The plaintiff's deed, which contains the reservation, conveys to him a strip of land eight rods in width and fifty rods in length. — The road laid out by the Selectmen, and accepted by the town, is four rods in width, extending the whole length and directly through the centre of the plaintiff's lot; thus leaving him, unincumbered by the road, two rods only on each side. The case does not state, but it is probable that the tract of fifty rods by eight, lies contiguous to the plaintiff's farm. Whether it be so or not, it is manifestly important to him, if the town must have a road over the whole length of this narrow strip of eight rods only in width, if one half of it must be appropriated as an easement for the public accommodation, that it should be so taken as to leave the other half in a body, rather than divide it into two narrow strips of only two rods in width each; or if the whole made a part of the plaintiff's farm, that the road should be taken from the exterior part, so as to leave the residue still connected with the farm. Is it not reasonable that the owner, whose land is to be thus cut up and rendered worthless, should have notice, that he might have an opportunity of resisting such a measure at every step, and by every legal and proper means? Common justice would seem to require that he should; and that, although the road might be laid without compensation for damages, yet that he had remaining an interest of no less magnitude, to have it so laid as not to render useless any portion of his remaining land. The party interested has a right to be heard before the Selectmen, upon the propriety of laying out *any* road over his land, and, provided they proceed to lay it out, as to the most suitable place for its location, having regard to his own interest and convenience, as well as the convenience of the town. The Selectmen are to exercise their judgment upon these questions, and the party interested, if he can have an opportunity to be heard, may be able to present such facts and arguments as will influence their judgment in his favour; but if he fail, he has then a further right to be

heard before the town in the nature of an appeal from the decision of the Selectmen. 5 *Pick.* 494. It is preposterous to say that the owner has a right to be heard upon every question touching his interest, and yet deny him notice of the time and place of hearing. The right to notice necessarily follows from the right to be heard.

In *Harlow v. Pike*, the Court say, " when the legality of a " town way comes in question, there must be proof offered that " the Selectmen gave due notice to all individuals interested in " the location ;" not confining it merely to the interest arising from the right to damages, but extending it clearly to every immediate interest, such as the owner of the soil must have, even if his right to damages has been relinquished. The Court say further, " a principle should be adopted which will apply to " all owners ; and we know of none so just and fair, and equi- " table, as that which requires the Selectmen to give notice to " the owners of land over which a town way is about to be " laid, in the same manner as a committee of the Court of Ses- " sions are bound to do." If it is incumbent on such a committee to give notice, as it clearly is, it is equally or more important that Selectmen should give notice, as they have more enlarged and extensive powers. The committee have no authority to adjudicate upon the necessity or common convenience of the road ; — that is all settled by the Court, from which they derive their appointment, and previous to its being made. Their duty is imperative to lay out. But the Selectmen, in regard to town ways, are to determine upon the expediency and necessity of the road. Their power, in this respect, is similar in its nature to the power exercised by the Court of Sessions in adjudicating upon the necessity of a public highway. They then lay out; and in this part of their duty they exercise similar powers to those entrusted to a laying committee by the Court of Sessions. We apprehend the case is not to be found where such a committee were excused from giving notice to the owner of land over which they laid a road, because there was in his deed a reservation of right to roads, for the town or county, free from damages, or where in such a case of omission their doings were held valid.

But there is another objection to the legality of this road entitled to consideration. The warrant for calling the town meeting, at which the laying out was accepted, was dated the 27th of *February*, and the laying out by the Selectmen was not until the seventh of *March* following. The statute contemplates, first, a laying out by the Selectmen, and then the calling a meeting of the town for the purpose of considering their report. Now, if the Selectmen may issue their warrant for a meeting, previous to laying out, they may defer the laying until the day previous to, or the same day of the town meeting, and if their act of laying the road is valid without notice to the owner of the land over which it is laid, it then follows that he is to have no notice except what is to be derived from the warrant for calling the meeting. But how many individuals there are in every town that never see a warrant for town meeting. When the season arrives for the annual meeting for transacting town business and the choice of town officers, they perhaps make inquiry and attend ; but meeting after meeting may be holden, at other seasons of the year, without their knowledge. If a road can be laid out the day previous to, or the same day of the meeting at which it is accepted, without any notice to the owner of the land, except what he may derive from a warrant for town meeting, how hazardous it may be to the interest of the citizens. Even if such short notice should be given, in many cases it would be unavailing. The owner might be absent, or sick and unable to make preparations to present his case before the town, whose decision is to be final, and thus his rights would be jeoparded, perhaps foreclosed, without any fault or neglect on his part. But if the statute be so construed, as to require the laying out to be completed previous to issuing the warrant for the meeting, as from the phraseology seems to have been intended, then a reasonable time must intervene before the appeal is to be heard by the town, and the party appealing, instead of being taken by surprise, will have opportunity to prepare his case, so that it may be more thoroughly understood. If he is notified of the intended laying out, he may not be able to decide whether he shall object or not, until the actual location. He may be satisfied to have it *here,* but the Selectmen

may lay it *there,* where it will be ruinous to his interest.   Shall the statute be so construed that he may be compelled to pass immediately from the Selectmen to the town meeting, without any opportunity to make preparation for the exhibition of his case to those who are finally to decide upon it ?   It may be necessary for him to have other lines run, other routes examined, and testimony taken for the better understanding of his case ; and when in controversy between man and man, for the most trifling sum, the law gives, at least, seven days for the preparation of the defence, can it be that it will permit the rights of realty to be encroached upon, and a perpetual servitude created without any notice, or a notice so short as to answer no beneficial purpose.   We think not ; and we are supported in this opinion by the language of the Court in *Keen v. Stetson,* 5 *Pick.* 494, where it is said by *Parker C. J.* in delivering the opinion, that, " it is clear, that the report of the Se- " lectmen is to be made to a meeting to be regularly notified " and warned after the act of laying out," &c.   The language of the statute favours this construction ; it corresponds better with individual security, without impairing or prejudicing public rights or general convenience.

We do not perceive in the case any evidence of waiver of notice by the plaintiff.   There is no intimation that he either knew of the laying out by the Selectmen or acceptance by the town, but the report of the Judge expressly states to the contrary ; and from what is admitted as the testimony of *Perry,* it would seem that no notice was given to the plaintiff of what had been done until *December* succeeding the laying out, which was in *March.*   His offer to *Perry* to cut and clear the logs away and make a winter road upon certain conditions, is no waiver of notice or confirmation of the road, notwithstanding any irregularities or omissions in the laying out.   If he had actually cleared out the road and opened it for the public, it might then perhaps have been too late for him to have contested the validity of the laying out ; at any rate, he could have maintained no action.   But he forbore to do this, and cut out a winter road on the exterior line of his lot, three rods in width, embracing one rod of the road as laid by the Selectmen,

and two rods to the westward of it, which had been, by the laying out, separated from his farm.   Whether he performed what he understood to be his promise to *Perry*, or not, it is not material to inquire.   It is manifest that he was disposed to acquiesce in the opening a road for the accommodation of the town, by including as a part of it, the two rods in width, which had been excluded by the Selectmen; but that he did not acquiesce in the laying out or opening the road through the centre of his eight rod strip ; and unless his conduct amounted to acquiescence, there can be no presumption of waiver of notice arising from it.

We will now consider the rights of the town arising from the original laying out, division and sale of the lots.   It appears that in 1761, the tract of country now comprised within the limits of the town of *Sidney*, and adjoining the *Kennebec* river, was divided into lots by direction of the Proprietors of the Kennebec purchase, at that time the owners of the whole tract. The division was made and plan returned by one *Winslow*. The plan represents three ranges of lots ; — the first range lying upon the river and extending back one mile, the second including the second mile from the river, and the third range including the third mile ; so that each range was one mile in width. It is understood that there was no actual survey, except on the river, and that all the other lines of the three ranges were laid down without reference to known monuments or actual admeasurement.   The plan represents a vacant space of eight rods in width between each of these ranges, as left for roads ; but as there had been no actual examination or laying out of the roads, the surveyor, in addition to his return, adds, that the reservations for roads are to be altered according to the convenience of the settlers.   The town road, which is the subject now in litigation, was laid by the Selectmen on one of these reservations, or range-ways, as they are now called, in the rear of front lot No. 47, which reservation had never been previously occupied as a road or way of any kind, either by the town or individuals.

Whatever rights might have been acquired by the owners of adjoining lots, it is clear that the town of *Sidney* acquired

no right of soil in these reservations. The fee either remained in the original proprietors, or passed with the grant of the lots adjoining. We do not say that a grant or conveyance of land bounded on a public highway would not carry with it the fee to the centre of the road as a part or parcel of the grant, when there were no words in the conveyance that indicated a different intention. That is a question which it will be time enough to answer when a case shall have arisen in which it may be distinctly presented. In the case before us, it is manifest that it was not the intention of the Proprietors that any part of the reservation in the rear of front lot No. 47 in the first range should belong to the second range, it being clearly excluded from that by the terms of the grant. The conveyance, by the Proprietors of the Kennebec purchase, of front lot No. 47, and the corresponding lot in the rear of it in the second range, to hold in severalty, was in 1764 to *James Bowdoin.*

After describing the front lot as fifty rods in width on the river, and three hundred and twenty poles in length, answering to the width of the first range, the conveyance proceeds with the tract on the second range, and commences at a point one mile *and eight poles* from the *Kennebec* river, thus excluding from the grant of the tract on the second range, the eight rod reservation as delineated on *Winslow's* plan. The fee of any part of the range-way did not, therefore, pass with the adjoining tract on the second range. But if the conveyance had been such that the fee in the range-way had passed with the adjoining lots, it would not relieve the defendant. In that case the plaintiff, as owner of front lot No. 47 would own to the centre of the range-way, including *two rods in width* of the tract on which the trespass is alleged to have been committed. If the fee did not pass with either lot by the conveyance, then it remained in the Proprietors, and is now in the plaintiff under conveyance from them. If the plaintiff owns the fee, what right has the town to disturb him in its enjoyment. If the Proprietors had expressly covenanted with their grantees for a right of way according to the reservation on *Winslow's* plan, it would not have given to the town of *Sidney,* as a town, any rights in such ways, or imposed upon them any obligations to repair, or

have rendered them answerable in damages for injuries sustained by individuals by reason of neglect to repair. Certainly not, until the road had been opened and become a public highway by *user*. The town could not open a road under a grant of way to individuals. It must resort to the statute for its authority, and the requisites of the statute must be pursued, or the town gains no rights in such a case. If then an express grant of way to individuals will not of itself give rights to the town, clearly an implied covenant would not do it; and the defendant has not contended that the reservations on the plan, and conveyances referring to them by the Proprietors, amounted to any thing more than a grant of way to the individual purchasers of adjoining lots. We do not decide that it amounts to that; but if it did, we are clearly of opinion that it gives the town no rights in or over the range-ways; unless on a regular laying out of a town or private way, it may, perhaps, bar the Proprietors and their grantees from recovering damages. When the acts were committed of which the plaintiff complains, and for which he now seeks redress, no easement over this range-way had ever been claimed by the town or adjoining occupants, for nearly seventy years; no road had been opened or travelled through it; and the defendant, as surveyor of highways, had no legal authority to enter thereon for the purpose of constructing a town road, unless such road had been legally laid out by the Selectmen and accepted by the town, according to the provisions of the statute. That not having been done, the ruling of the Judge must be sustained, and judgment entered on the verdict.